UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

THOMAS J. NICHOLSON,

          Plaintiff,

    v.

MEGAN J. BRENNAN, *Postmaster General, U.S. Postal Service*,

          Defendant.

Civil Action No. 17-07144 (PGS)(ZNQ)

**MEMORANDUM OPINION**

This matter comes before the Court upon Defendant Louis DeJoy's, Postmaster General of the United States Postal Service ("Defendant"), Motion for Summary Judgment against Plaintiff Thomas Nicholson's ("Plaintiff") claims alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, and the Rehabilitation Act of 1973, 29 U.S.C. § 701 et seq. (the "Motion"). (Mot. for Summ. J., ECF No. 48.) Plaintiff opposed, (Pl.'s Opp'n, ECF No. 51), and Defendant replied, (Def.'s Reply, ECF No. 52). The Court has carefully considered the parties' arguments, and decides the matter without oral argument pursuant to Federal Rule of Civil Procedure 78(b) and Local Civil Rule 78.1. For the reasons set forth herein, Defendant's Motion is granted.

    I.    **FACTS**

Defendant filed this Motion along with a Statement of Material Facts Not in Dispute pursuant to Fed. R. Civ. P. 56(c)(1) and L. Civ. R. 56.1(a). Plaintiff filed an opposition to this Motion, however, Plaintiff failed to submit a Statement of Material Facts Not in Dispute as required by L. Civ. R. 56.1(a) or any factual evidence in opposition to Defendant's Motion. As a

result, the Court accepts all of the facts set forth in Defendant's Statement of Material Facts and Defendant's authenticated and verified exhibits as true.[1] *See Egersheim v. Gaud*, No. 07-5116, 2012 WL 209206, at *4 (D.N.J. Jan. 24, 2012); *Ajmeri v. Bank of Am. Health & Welfare Plan*, No. 12-02394, 2013 WL 4597047, at *5 (D.N.J. Aug. 29, 2013). As discussed below, Plaintiff has failed to present any issue of material fact to withstand Defendant's Motion.

The issues at hand arise from Defendant's alleged discrimination against Plaintiff because of his skin cancer and Defendant's alleged retaliation against Plaintiff for his engagement in protected activity during his employment with the United States Postal Service ("USPS"). Plaintiff began working for the USPS on March 17, 1984 after serving in the Army from 1976 to 1979. (Def.'s Statement of Material Facts ("DSMF") ¶¶ 2-3, ECF No. 48-1). Plaintiff first worked for the USPS as a letter carrier in Staten Island, New York. (*Id.* at ¶ 4.) Plaintiff alleges that in or around 1989, he passed various mechanics exams to qualify for different positions including the Area Maintenance Specialist ("AMS") and Letter Box Mechanic ("LBM") positions. (*Id.* at ¶ 5; Am. Compl. ¶ 9, ECF No. 18.) In June 1989, pursuant to Plaintiff's request, Plaintiff was reassigned to a letter carrier position in Keyport, New Jersey. (DSMF ¶ 6.)

Plaintiff was diagnosed with skin cancer in 1991, while he was employed as a letter carrier with the USPS. (*Id.* at ¶ 9.) Plaintiff maintained the letter carrier position until 1999. (*Id.*) In 1998, Plaintiff requested a transfer to a maintenance position to limit the amount of time he spent outside in the sun, but his request was denied. (*Id.* at ¶¶ 11-12.) On or around December 29, 1998, Plaintiff

---

[1] "The opponent of summary judgment shall furnish, with its opposition papers, a responsive statement of material facts, addressing each paragraph of the movant's statement, indicating agreement or disagreement and, if not agreed, stating each material fact in dispute and citing to the affidavits and other documents submitted in connection with the motion; any material fact not disputed shall be deemed undisputed for purposes of the summary judgment motion." L. Civ. R. 56.1(a).

2

filed an EEO Complaint against the Monmouth Plant regarding the denial of his transfer request. (*Id.* at ¶ 13.)  In February 1999, the USPS reassigned Plaintiff to a custodian position in the Monmouth Processing and Distribution Center ("Monmouth P&DC"). (*Id.* at ¶ 14.) Plaintiff's skin cancer reoccurred in 1998, but then went into remission until December 2014. (*Id.* at ¶ 15.) Plaintiff's cancer did not limit his ability to work as a custodian. (*Id.* at ¶17.)

In 2005, the USPS offered and Plaintiff accepted, a position as an AMS, Grade 7, at the Monmouth P&DC. (*Id.* at ¶19.) Plaintiff's skin cancer did not have any limiting effect on his ability to work as an AMS, nor did the cancer require any restrictions. (*Id.* at ¶¶ 20-21.) Plaintiff alleges that from 2005 through 2012, he also fulfilled the duties of the Area Maintenance Technician ("AMT").  (*Id.* at ¶ 30; Am. Compl. ¶ 16.) As an AMS, Plaintiff served as an assistant to the AMT. The AMT was one grade higher on the Postal Service pay schedule.  (DSMF at ¶ 26.)

Plaintiff alleges that from 2005 to 2012, Plaintiff's supervisors also assigned him work as the Letter Box Mechanic, ("LBM") which was the same grade level as the AMS. (*Id.* at ¶ 33; Am. Compl. ¶ 17.)  Prior to October 2012, Plaintiff was on the promotion eligibility list for the LBM position. (DSMF. at ¶ 38.) In 2011, the person who held the LBM position was out of work for an extended period. (*Id*. at ¶ 39.) Plaintiff requested that the USPS place him in the LBM role permanently, but his request was denied. (*Id*.)

On December 1, 2012, Plaintiff signed a formal EEO Complaint of Discrimination alleging discrimination based on age and disability by the Postal Service Plant Manager and American Postal Worker's Union ("APWU") Red Bank Local. (*Id*. at ¶ 49.) In his Complaint, Plaintiff alleged that he was removed from the list for eligibility for promotion to the LBM position and that he was placed last on the AMT list. (*Id*. at ¶ 50.) Plaintiff also alleged that the Union and Management changed the selection process and placed others ahead of him despite the fact that he

3

was on the lists prior to 2005. (*Id.* at ¶ 51.) Plaintiff sought to be placed at the top of the promotion list for the LBM and AMT positions and alleged that the USPS denied him a fair opportunity to be promoted to the LBM and AMT positions. (*Id.* at ¶¶ 42,44, 52.)

In 2014, the USPS created a new Area Maintenance Technician position at the Monmouth P&DC, and Dwight Ruth was given the new position. (*Id.* at ¶¶ 56-57.) On October 15, 2014, Plaintiff signed a formal EEO Complaint of Discrimination alleging retaliation by Postmaster General Patrick Donahue and the APWU President Mark Dimonstein. (*Id.* at ¶ 60.)  Plaintiff alleged that the LBM position was eliminated, and that he was passed over for a promotion to the AMT position in retaliation for filing his December 2012 EEO Complaint. (*Id.* at ¶ 61.) On October 4, 2014, Plaintiff was promoted to an AMT position, Grade 9 and he received an increase in his pay. (*Id.* at ¶ ¶ 64, 100.)

## II.     LEGAL STANDARD

### a. Summary Judgment

Summary judgment is appropriate if the record shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A material fact raises a "genuine" dispute if the evidence is such that a reasonable jury could return a verdict for the non[-]moving party." *Williams v. Borough of W. Chester*, 891 F.2d 458, 459 (3d Cir. 1989) (quoting *Anderson Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)). A fact is material if it has the ability to "affect the outcome of the suit under governing law." *Kaucher v. Cty. of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248.

In evaluating the evidence, the Court must consider all facts and their logical inferences in the light most favorable to the non-moving party. *Curley v. Klem*, 298 F.3d 271, 276-77 (3d Cir. 2002). On a motion for summary judgment, a court's "function is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine [dispute] for trial." *Anderson*, 477 U.S. at 248.

### b. Retaliation

To state a *prima facie* case of retaliation under Title VII, a plaintiff must show "(1) she engaged in activity protected by Title VII; (2) the employer took an adverse employment action against her; and (3) there was a causal connection between her participation in the protected activity and the adverse employment action." *Moore v. City of Phila.*, 461 F.3d 331, 340-41 (3d Cir. 2006) (quoting *Nelson v. Upsala Coll.*, 51 F.3d 383, 386 (3d Cir. 1995)). Title VII provides:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e-3(a). The antiretaliation provision aims to secure "a workplace where individuals are not discriminated against because of their racial, ethnic, religious, or gender based status," "by preventing an employer from interfering (through retaliation) with an employee's efforts to secure or advance enforcement of the Act's basic guarantees." *Burlington N. & Sante Fe Ry. Co. v. White*, 548 U.S. 53, 63 (2006) (citation omitted). "The antiretaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm." *Id.* at 67.

"A plaintiff seeking to prove her case through indirect evidence . . . may do so by applying the familiar *McDonnell Douglas* burden-shifting framework." *Carvalho-Grevious v. Del. State*

5

*Univ.*, 851 F.3d 249, 257 (3d Cir. 2017) (citation omitted). "After establishing a prima facie case of retaliation, the burden shifts to the employer to provide a legitimate non-retaliatory reason for its conduct." *Id.* (citing *Moore*, 461 F.3d at 342). If the employer accomplishes this, the burden shifts back to Plaintiff "to convince the factfinder both that the employer's proffered explanation was false [that is, a pretext], and that retaliation was the real reason for the adverse employment action." *Id.* (quoting *Moore*, 461 F.3d at 342) (alteration in original). The Supreme Court of the United States has more recently elaborated that "Title VII retaliation claims must be proved according to traditional principles of but-for causation," requiring "proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Univ. of Tex. v. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013).

In interpreting the first prong, the Court contemplates that "protected 'opposition' activity includes not only an employee's filing of formal charges of discrimination against an employer but also 'informal protests of discriminatory employment practices, including making complaints to management.'" *Daniels v. Sch. Dist. of Phila.*, 776 F.3d 181, 193 (3d Cir. 2015) (quoting *Curay–Cramer v. Ursuline Acad. of Wilmington, Del., Inc.*, 450 F.3d 130, 135 (3d Cir.2006) (further quotation omitted)). "Whether the employee opposes, or participates in a proceeding against, the employer's activity, the employee must hold an objectively reasonable belief, in good faith, that the activity they oppose is unlawful under Title VII." *Moore*, 461 F.3d at 341.

For an employer's acts "to satisfy the second prong of a prima facie case of retaliation, the plaintiff 'must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Daniels*, 776 F.3d at 195 (quoting *Burlington Northern*, 548 U.S. at 68). As for material adversity, the United States Supreme Court has

6

commented that "it is important to separate significant from trivial harms," further stating "[a]n employee's decision to report discriminatory behavior cannot immunize that employee from those petty slights or minor annoyances that often take place at work and that all employees experience." *Burlington Northern*, 548 U.S. at 68.

"To demonstrate a link between protected activity and an employer's adverse action, a plaintiff may rely on the temporal proximity between the two if unusually suggestive." *Daniels*, 776 F.3d at 196 (quotation omitted). "The causal connection may be demonstrated by evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action." *Jalil v. Avdel Corp.*, 873 F.2d 701, 708 (3d Cir. 1989) (quoting *Burrus v. United Tele. Co.*, 683 F.2d 339, 343 (10th Cir. 1982)). "[T]emporal proximity alone [is] insufficient to establish the necessary causal connection when the temporal relationship is not 'unusually suggestive,' . . . nineteen months [is] too attenuated to create a genuine issue of fact." *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 280 (3d Cir. 2000) (quoting *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 503 (3d Cir. 1997)). "[W]here there is a lack of temporal proximity, circumstantial evidence of a 'pattern of antagonism' following the protected conduct can also give rise to the inference." *Kachmar v. SunGard Data Sys., Inc.*, 109 F.3d 173, 177 (3d Cir. 1997) (citing *Robinson v. Se. Pa. Transp. Auth.*, 982 F.3d 892, 895 (3d Cir. 1993)).

### c. Disability Discrimination (The Rehabilitation Act of 1973)

Under the Rehabilitation Act of 1973, employers are prohibited from discriminating against employees or "persons with disabilities in matters of hiring, placement, or advancement." *Shiring v. Runyon*, 90 F.3d 827, 830 (3d Cir. 1996). "The Rehabilitation Act of 1973 is applicable only to federal employers and employers who receive federal funding." *Id*. To establish a prima facie case of disability discrimination under the Rehabilitation Act, a plaintiff must establish that

"(1) he is disabled, (2) he is otherwise qualified to perform essential functions of his job with or without reasonable accommodations, and (3) he suffered an adverse employment action as a result of discrimination based on his disability." *Cook v. City of Phila.*, 649 F. Appx. 174, 176 (3d Cir. 2016).

### III. DISCUSSION

#### A. Retaliation

Defendant argues that it is entitled to summary judgment because Plaintiff cannot establish a prima facie case of retaliation. Defendant further argues that even if Plaintiff could establish a prima facie case of retaliation, it has provided legitimate, non-retaliatory reasons for its actions and Plaintiff is unable to show that these reasons are pretextual.

To present a *prima facie* case of retaliation under Title VII, a plaintiff must show "(1) she engaged in activity protected by Title VII; (2) the employer took an adverse employment action against her; and (3) there was a causal connection between her participation in the protected activity and the adverse employment action." *Moore*, 461 F.3d at 340-41 (quoting *Nelson*, 51 F.3d at 386).

Activity protected by Title VII includes an employee's filing of formal charges of discrimination against an employer. *See Daniels,* 776 F.3d at 193. An adverse action is material when it could have "dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington Northern*, 548 U.S. at 68 (citations omitted). In determining whether an employment action is materially adverse, courts must consider "whether an environment is sufficiently hostile or abusive by 'looking at all the circumstances,' including the 'frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work

performance.'" *Faragher*, 524 U.S. at 787-88. "[C]onduct must be extreme to amount to a change in the terms and conditions of employment." *Id.* at 788. As for causation, "Title VII retaliation claims must be proved according to traditional principles of but-for causation," meaning that there must be "proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Nassar*, 570 U.S. at 360.

Once Plaintiff establishes a prima facie case of retaliation, "the burden shifts to the employer to provide a legitimate non-retaliatory reason for its conduct." *Carvalho-Grevious*, 851 F.3d at 257. If the employer does provide a legitimate non-retaliatory reason for its conduct, the burden shifts back to Plaintiff to establish that the employer's proffered reason was merely pretext, and that "retaliation was the real reason for the adverse employment action." *Id*.

Plaintiff engaged in protected activity by filing formal complaints with the EEOC against the USPS in 2012 and 2014. (DSMF ¶¶ 49, 60.) Therefore, the first prong for establishing retaliation is satisfied. However, the Court must address whether the remaining prongs are satisfied for each of Plaintiff's alleged instances of retaliation. The Court must determine whether Plaintiff has produced evidence to cause a genuine issue of material fact as to whether Defendant took materially adverse actions against him, and whether there was a causal connection between Plaintiff's participation in the protected activity and the alleged adverse employment actions.

### i.   2012 Placement on Promotion Eligibility Lists

Plaintiff contends that Defendant retaliated against him in 2012 when he was passed over for a promotion to the Letter Box Mechanic ("LBM") position because he filed an EEO Complaint alleging discrimination in 1998. (Am. Compl. ¶ 37.) Plaintiff also alleged that the USPS removed him from the promotion eligibility list for the LBM position and placed him last on the list for the Area Maintenance Technician ("AMT") position. (DSMF ¶ 50.) Plaintiff also contends in his

9

Opposition that the USPS denied him promotions to the open AMT and LBM positions in 2012-2013. (Pl.'s Opp'n at 8, 16.)  However, Plaintiff cannot establish that he suffered an adverse employment action. Plaintiff admitted during his deposition that the USPS did not promote anyone to the LBM or AMT positions until 2014. (DMSF ¶ 53.) Plaintiff also has not presented any evidence that establishes that Plaintiff's placement on promotion eligibility lists in 2012 was in any way connected to Plaintiff's 1998 EEO Complaint, nor did he provide or cite to any evidence that his alleged discriminators were even aware of his 1998 EEO Complaint.

Even if Plaintiff could have presented a prima facie case of retaliation, the USPS provided legitimate, non-retaliatory reasons for Plaintiff's placement on the promotion eligibility lists for the LBM and AMT positions. The USPS determined Plaintiff's ranking on the promotion eligibility lists according to the provisions in the Collective Bargaining Agreement ("CBA"), which required the USPS to rank employees in the older Maintenance Selection System ahead of employees in the newer Revamped Maintenance Selection System. (*Id*. at ¶¶ 77-81.) Within each selection system, the USPS ranked employees again using the objective scoring based on the scores the employees received on the Exam 955 Maintenance Assessment System test, an interview, and seniority. (*Id*. at ¶ 86.)   If the USPS granted Plaintiff's request to place him at the top of the promotion eligibility lists, the USPS would have violated the rules set forth in the CBA. (*Id*. at ¶ 88.) Plaintiff has not cited to any evidence that shows Defendant's reasoning for Plaintiff's placement on the promotion eligibility lists is pretext. Therefore, Plaintiff cannot establish a prima facie case of discrimination with respect to the 2012 promotion matter.

### ii. Promotion of Another Employee in 2014

Plaintiff alleges that he was retaliated against in 2014 for filing his 2012 EEO Complaint when he was allegedly passed over for a promotion to the AMT position and another employee, Dwight Ruth, was given the position. (Am. Compl. ¶ 24; Pl.'s Opp'n at 17.)

However, Defendant has provided legitimate, non-retaliatory reasons for promoting Mr. Ruth. Mr. Ruth was selected to fill the AMT position because of the terms of the CBA. The USPS determined Plaintiff's ranking on promotion eligibility lists according to the terms of the CBA because Plaintiff was a member of the American Postal Worker's Union ("APWU"). (DSMF ¶ 46.) The CBA required that employees in the older Maintenance Selection System ("MSS") be ranked higher than employees in the newer Revamped Maintenance Selection System ("RMSS"). (*Id*. at ¶¶ 77-81.) Plaintiff was in the RMSS. (*Id*.) The USPS also ranked employees using objective scoring based on the employees' scores on the Exam 955 Maintenance Assessment System test, an interview and seniority. (*Id*. at ¶ 86.) Dwight Ruth was ranked higher than all three people on the promotion eligibility list for the AMT position, including Plaintiff. (*Id*. at ¶ 92.) Plaintiff even admitted that Mr. Ruth had more seniority than he did. (*Id*. at ¶ 95.) Because of the requirements set forth in the CBA, the USPS could not move Plaintiff to the top of the promotion eligibility lists as Plaintiff requested because that would have violated the effective CBA. (*Id*. at ¶ 88.) Plaintiff's prior experience covering as AMT did not play a role in the decision under the conditions set forth in the CBA. Plaintiff has not cited to any evidence in the record that suggests the USPS's reasoning is pretext. Accordingly, Plaintiff has not established retaliation with respect to this matter.

### iii. Plaintiff's Alleged Demotion in 2014

Plaintiff also contends that the USPS retaliated against him in 2014 by promoting him and then demoting him for failing to withdraw and settle both of his EEO complaints. (Pl.'s Opp'n at 14-15.) Plaintiff contends that he was demoted to a lower pay grade which cost him approximately $5,000 to $7,000. (*Id.* at 15.)

Plaintiff cannot establish a prima facie case with respect to this retaliation allegation. Plaintiff did not suffer an adverse employment action as he was promoted, not demoted. Plaintiff was promoted from Area Maintenance Specialist ("AMS") Grade 8 to AMT Grade 9 effective October 4, 2014. (DSMF ¶¶ 96-100.) The USPS processed a notification of Personnel Action, PS Form 50, for the promotion. (*Id.* at ¶ 96.) The Form states "Reassignment/CAO-Promotion." (*Id.*) Plaintiff alleges that he received a PS Form 50 that indicated that he was demoted. (Am. Compl. ¶ 25.) The description on the PS Form 50 that Plaintiff alleges is an indication of a demotion states "Cancellation." (Def.'s Mot. at 13 (citing Oswald Decl. ¶ 5)). It does not say "Demotion." (*Id.*) The PS Form 50 includes a description that states "cancels NOA 926 EFF 10/04/2014 in order to process placement." (*Id.*) Therefore, it indicates that the USPS cancelled a previous order to process placement, correcting a clerical error. (*Id.*) There was no substantive effect on Plaintiff's promotion. (*Id.*) The evidence in the record shows that the USPS processed a Notification of Personnel Action with an effective date of November 15, 2014 which shows Plaintiff at Grade 9 and with an increased salary to $60,652. (DMSF ¶ 97.) The form also states "Contractual Increase. RX in order to process earlier promotion." (*Id.*) Plaintiff even admitted that he was paid a higher AMT salary. (Pl.'s Opp'n at 19.) Plaintiff has not cited to any evidence in the record that would support a finding that he was demoted to a lower paygrade after receiving an increase in his pay. Accordingly, the Court finds that Plaintiff has not presented a prima facie case of retaliation.

### iv.     Elimination of The LBM Position

Plaintiff also alleged that the USPS retaliated against him by eliminating the LBM position. (DSMF ¶ 61.) The USPS's decision to eliminate the LBM position was not an adverse employment action. The decision did not affect the terms or conditions of Plaintiff's employment. Moreover, the USPS provided legitimate, non-retaliatory reasons for eliminating the position. The USPS was in the process of closing the Monmouth P&DC location and was reassessing its staffing needs. The USPS was preparing to close that facility in 2015.  (DSMF ¶ 59.) Plaintiff has not provided any evidence to refute Defendant's reasoning.

### v.     Delayed Mail

Plaintiff alleges that the USPS retaliated against him by delaying his mail from the EEO investigator who reviewed his EEO Complaint in 2012. (Am. Compl. ¶ 27.) The delayed mail included Plaintiff's Notice of Right to file an administrative EEO Complaint. Plaintiff cannot establish a prima facie case of retaliation with respect to this matter. Plaintiff has not established that the delayed receipt of his mail constitutes an adverse employment action, or that his engagement in a protected activity was the cause of the delay. Further, the evidence shows that the EEO investigator re-sent the Notice of Right to file after Plaintiff informed the investigator that he did not receive the Notice.  (DSMF ¶ 48.) The investigator also extended Plaintiff's time to file, and Plaintiff eventually filed the formal EEO Complaint on December 1, 2012. (*Id.* at ¶¶ 48-49.) Accordingly, Plaintiff has not established a case of retaliation with respect to this allegation.

The Court finds that summary judgment should be granted in favor of Defendant with respect to Plaintiff's retaliation claim.

### B. Disability Discrimination

To present a prima facie case of disability discrimination under the Rehabilitation Act, Plaintiff must show that "(1) he is disabled, (2) he is otherwise qualified to perform essential functions of his job with or without reasonable accommodations, and (3) he suffered an adverse employment action as a result of discrimination based on his disability." *Cook*, 649 F. Appx. at 176.

Plaintiff alleges that the USPS discriminated against him because of his disability by not promoting him to the LBM position in 2012 and by giving the position to someone who was less qualified and did not have any disabilities. (Am. Compl. ¶ 48; Pl.'s Opp'n at 21.) At issue is whether Plaintiff suffered any adverse employment actions as a result of discrimination based on his skin cancer disability. Plaintiff's skin cancer was in remission from December 1998 through November 2014. (DMSF ¶ 15.) Plaintiff has not provided any evidence in the record that shows that the USPS management who participated in the promotion decisions was aware of Plaintiff's disability. Plaintiff alleges that his Union representative made a comment regarding Plaintiff's health. (*Id.* at ¶ 75.) However, Plaintiff's Union representative is not a member of the USPS management and had no bearing on the USPS's promotion determinations. Plaintiff also admitted that no one in USPS management told him that he was not being promoted to the LBM position because of his skin cancer. (*Id.* at ¶ 76.) Moreover, when Plaintiff was asked at his deposition to explain why he believed that USPS management discriminated against him because of his skin cancer, Plaintiff stated that "I didn't really." (Def.'s Mot. at 16.) Accordingly, Plaintiff has admittedly failed to present a prima facie case of disability discrimination.

Even if Plaintiff could have established a prima facie case of discrimination, Defendant has offered legitimate, non-discriminatory reasons for its actions. The evidence in the record shows

that the rankings on the promotion eligibility lists were based on objective factors including whether the employee was categorized under the Maintenance Selection System or the Revamped Maintenance Selection System. (DSMF ¶ 77.) Chris Barrett, the employee who was promoted to the LBM position in January 2012, had priority over Plaintiff under the older Maintenance Selection System. (*Id.* at ¶ 40.) Plaintiff has presented no evidence to counter the USPS's reasoning. As a result, summary judgment is granted in favor of Defendant.

## IV.  CONCLUSION

For the reasons set forth above, Defendant's Motion for Summary Judgment is granted. (Mot. for Summ. J., ECF No. 48.) The Court will enter an Order consistent with this Memorandum Opinion.

s/ Zahid N. Quraishi

_____
**ZAHID N. QURAISHI**
**UNITED STATES MAGISTRATE JUDGE**